**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**NICHOLAS MCHENRY,** individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

**FRONTIER COMMUNICATIONS PARENT, INC.**,

Defendant.

Case No. 3:24-cv-1788

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Nicholas McHenry ("McHenry" or "Plaintiff"), individually, and on behalf of each class defined below, brings this class action complaint against Frontier Communications Parent, Inc., ("Frontier" or "Defendant"). Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of counsel, and facts that are public record:

## INTRODUCTION

1. Plaintiff brings this action against Frontier for its failure to properly and adequately safeguard the personally identifying information of over 750,000 of its current and former customers.

2. Defendant, a full-service communications provider headquartered in Dallas, Texas, offers a variety of communication solution services to residential and business customers, including an array of telecommunications and broadband internet access services through wholly-owned operating companies in 24 states in the United States, including its fiber-optic and copper networks, including video, high-speed internet, advanced voice, and secure digital protection.

3. As a requirement of providing services, Defendant collects critical personal identifying information from consumers, including, but not limited to, their names, email addresses, mailing addresses, birth dates, Social Security Numbers, and credit scores (generally referred to

herein as "PII").

4. Plaintiff seeks to hold Defendant responsible for its failure to protect and keep secure the PII of Plaintiff and similarly situated Class Members, and further seeks to hold Defendant responsible for its egregious failure to (a) identify the Data Breach, (b) identify its extent, (c) promptly notify consumers, and (d) make proper remediation and renumeration.

5. On or about April 14, 2024, unauthorized cyber criminals accessed and exfiltrated the PII of Frontier customers, including Plaintiff and others similarly situated (the "Data Breach"). The April 14, 2024, Data Breach affected over 750,000 people.

6. Plaintiff and Class members provided PII to Defendant, with the expectation that Frontier would maintain the security and privacy of that data, included highly sensitive information. Upon information and belief, the information that was exfiltrated by criminals from the Defendant, included personal identifying information – PII – such as names, email addresses, Social Security Numbers, credit scores, dates of birth, and phone numbers.

7. Plaintiff is informed and believes and thereupon alleges that prior to the Data Breach, Defendant had maintained the PII it had been given or otherwise obtained from Plaintiff and Class Members in a negligent and/or reckless manner, and that it had failed to adequately maintain its network, platform, and software, thereby exposing the PII of its customers, including Plaintiff and Class members to cyber thieves, who thereby found Frontier to be easy prey.

8. The risk of a Data Breach was well known to the Defendant. Plaintiff is informed and believes and thereupon alleges that Frontier had been on notice that its data security systems were inadequate and created a heightened risk of exfiltration, compromise, and theft.

9. Beyond failing to adequately secure the PII of Plaintiff and Class members, resulting in the Data Breach, Defendant further failed to provide timely notice to Plaintiff and affected Class members, which as a consequence, deprived Plaintiff and Class Members of the chance to more promptly or fully take measures to safeguard or otherwise protect themselves and mitigate harm. Frontier also has failed to adequately describe the Data Breach and its affects, even when it ultimately notified Plaintiff and Class Members of their PII exfiltration by cyber criminals, thereby compounding its misconduct.

10. Armed with the PII secured from the Data Breach, hackers can sell the PII to other thieves or misuse the PII themselves to commit a variety of crimes that further harm victims. For instance, they can take out loans, mortgage property, open financial accounts, and open credit cards in a victim's name; use a victim's information to obtain government benefits; file fraudulent returns to obtain a tax refund; obtain a driver's license or identification card in a victim's name; gain employment in another person's name; or give false information to police during an arrest.

11. As a result of Defendant's willful failure to adequately safeguard and maintain its servers, network and cyber-systems, or prevent the Data Breach as more fully discussed below, Plaintiff and Class Members are more susceptible to identity theft and/or have experienced and will continue to experience and/or face an increased risk of financial harms, because they are at substantial risk of identity theft, fraud, and other related harm.

## PARTIES

12. Plaintiff Nicholas McHenry is a resident of Medina and a citizen of Ohio. Plaintiff was briefly a customer of Frontier in or about late 2019 or early 2020, later cancelling Frontier's service because he found it unsatisfactory. In order to receive services from Frontier, Plaintiff was required to provide PII such as his name, email address, mailing address, birth date, and Social Security Number. As a result of Defendant's actions and consequent Data Breach as more fully discussed below, Plaintiff has been injured, has suffered loss, and will be subject to a substantial, continuing risk for further identity theft. Since learning of the Data Breach, Plaintiff has carefully monitored his financial accounts and credit reports. As a further result of Defendant's actions, Plaintiff will need to continue monitor financial accounts and credit reports and take other measures to protect himself from identity theft and fraud. At the time he opened an account with Frontier, Plaintiff believed that it would maintain the privacy and security of the PII that he was required to provide. Plaintiff further believes he paid a premium to Defendant for its data security. Plaintiff would not have used Frontier had he known that it would expose sensitive customer PII, making it available to identity thieves.

13. Defendant Frontier is a Delaware corporation with its principal place of business located in Dallas, Texas.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This lawsuit is a class action with an amount in controversy over $5 million, involving over 100 proposed class members, including those who are from a different state than Defendant.

15. This Court may exercise personal jurisdiction over Defendant because Defendant is registered to do business and has its principal place of business in this District.

16. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff' claims occurred in this District.

## FACTUAL ALLEGATIONS

17. Defendant Frontier Communications Parent, Inc. ("Frontier" or "Company"), headquartered in Dallas, Texas, is a provider of telecommunications services. The company provides broadband, ethernet, voice, video, and traditional circuit-based services to more than 750,000 U.S. consumers. It also provides advanced hardware and network solutions, bundled or packaged solutions, customer premises equipped (CPE) and related maintenance services. It offers services to residential customers over its fiber-optic and copper networks. Frontier also offers a wide range of third-party telecom equipment to small, medium, and enterprise business customers. The Company provides video services under the Frontier TV brand. It collaborates with various satellite providers and OTT video providers to offer comprehensive services. The Company has a presence in numerous states within the United States, including California, Florida, Indiana, New York, Ohio, Connecticut, North Carolina, South Carolina, Illinois, and Texas.

***The PII of Plaintiff and Class Members Entrusted to Frontier***

18. Plaintiff is informed and believes, and thereupon alleges that in the ordinary course of its for-profit business and enterprise, Frontier received, acquired and collected Plaintiff's and

Class Members' PII, including individuals' names, addresses, dates of birth, and Social Security numbers, which information was maintained and stored on Defendant's computer systems.

19. Defendant knew or reasonably should have known at all times material that it stored sensitive and personal PII and was required to comply with applicable standards related to data security and all federal and state laws protecting customers' PII, and provide adequate notice to members of the public whose PII is disclosed without their consent or proper authorization.

20. By obtaining, collecting, receiving, and/or storing Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew, or should have known, that they were thereafter responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure. Defendant's knowledge of its duties and responsibilities is apparent from a review of its website, which states in pertinent part:[1]

> We use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information we collect and store.
>
> * * *
>
> Personally identifiable and other sensitive records are retained only as long as reasonably necessary for business, accounting, tax, or legal purposes.

21. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII, including but not limited to, protecting their usernames and passwords, using only strong passwords for their accounts, and refraining from browsing potentially unsafe websites.

22. Upon information and belief, Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

23. Defendant could have prevented or mitigated the effects of the Data Breach by better securing its network, properly encrypting its data, or better selecting its information technology partners.

---

[1] Frontier, "Privacy Policy", https://frontier.com/corporate/privacy-policy (last accessed on June 27, 2024).

24. Defendant's negligence in safeguarding Plaintiff's and Class Members' PII was exacerbated by the prevalence of public announcements of data breaches and data security compromises and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

25. Nonetheless, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' PII from being compromised, including failing to a) properly select its information security partners; b) ensure the proper monitoring and logging of the ingress and egress of network traffic; (c) ensure the proper monitoring and logging of file access and modifications; (d) ensure the proper training its own and its technology partners' employees as to cybersecurity best practices; (e) ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and Class Members; (f) timely and accurately disclose that Plaintiff's and Class Members' PII had been improperly acquired or accessed; (g) provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiff and Class Members, misuse the PII, and disclose it to others without consent; (h) ensure the proper implementation of sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions; and (i) ensure the proper encryption of Plaintiff's and Class Members' PII and monitor user behavior and activity to identify possible threats.

26. Defendant knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured PII.

27. Defendant's failure to protect the PII of current and former customers, and its failure to timely disclose the Data Breach, has left hundreds of thousands of Class Members at heightened risk of financial fraud and identity theft.

***The Data Breach***

28. According to media reports, a criminal ransomware hacker calling itself RansomHub

stole PII of over 750,000 persons from Frontier totaling 5 GB of data.[2] The ransomware group posted screenshots online of compromised data with a message that state in part:[3]

> We gave frontier 2 months to contact us but they don't care about clients data. Below is screenshot of some of the data […] Now anyone who wants to buy this data can contact our blog support, we only sell it once.

29. In May, 2024, Frontier's Report on Form 10-Q filed with the Securities Exchange Commission stated in pertinent part:[4]

> On April 14, 2024, we detected that a third party had gained unauthorized access to portions of our information technology environment. Upon detection, we initiated our established cyber incident response protocols and took measures to contain the incident. The containment measures, which included shutting down certain of the Company's systems, resulted in an operational disruption that could be considered material. Based on our investigation, ***we have determined that the third party was likely a cybercrime group, which gained access to, among other information, personally identifiable information***. We believe we have contained the incident and have restored our core information technology environment and normal business operations. While we do not believe the incident is reasonably likely to materially impact our financial condition or results of operations, we continue to investigate the incident, have engaged cybersecurity experts, and have notified law enforcement authorities. (Emphasis added).

30. Defendant unreasonably delayed in providing notice of the Data Breach to Plaintiff and Class Members.

31. On or about June 6, 2024, Defendant mailed a Data Breach Notification letter[5] to

---

[2] "Data Breach Impacts Over 750,000 Frontier Communications Customers" Inside Towers (June 12, 2024), https://insidetowers.com/data-breach-impacts-over-750000-frontier-communicationscustomers/?utm_source=New+Inside+Towers+List&utm_campaign=38ba356a24-EMAIL_CAMPAIGN_2024_06_10_06_25&utm_medium=email&utm_term=0_-38ba356a24-%5BLIST_EMAIL_ID%5D (last accessed June 27, 2024).

[3] Puerluigi Paganini, "Frontier Communication Data Breach Impacted Over 750,000 Individuals" *Security Affairs.*

[4] United States Securities and Exchange Commission, Form 10-Q, Frontier Communications Parent, Inc., https://www.sec.gov/Archives/edgar/data/20520/000156276224000120/fybr-20240331x10q.htm (last accessed June 27, 2024).

[5] Frontier Communications data breach letter, file://ftmfs1/home/Cmplx_Litigation/ronald.podolny/Downloads/Exhibit%20A%20-%20Frontier%20Notification%20Letter%20(2).pdf (last accessed on June 27, 2024).

customers/victims, stating in pertinent part:

> We are writing to inform you that some of your personal information may have been accessed by a third party during a recent cyber incident at Frontier Communications Parent, Inc. ("Frontier"). We take seriously the security of your data and are offering you one year of complimentary credit monitoring and identity theft resolution services to help protect your information. Please follow the instructions below to activate these services.
>
> **What happened?**
> On April 14, 2024, we detected unauthorized access to some of our internal IT systems. Our investigation identified your personal information among the data affected by this incident.
>
> * * *
>
> **What personal information was involved?**
> The personal information involved includes your <<b2b_text_1 (name, data elements)>>. Based on our investigation, we do not believe your personal financial information was affected.
>
> * * *
>
> **What is Frontier doing?**
> We take this incident and the security of information in our care seriously. Upon discovering the incident, Frontier retained leading cybersecurity experts to support the investigation and contain the incident. We also took steps to further strengthen our network security and prevent further access by the third party. We have notified law enforcement and applicable regulatory authorities.
>
> We are offering you free credit monitoring and identify theft resolution services for one year through Kroll to help protect your information. To take advantage of these complimentary services, please following the instructions below to activate.
>
> […]
>
> For more information about Kroll and the credit and identity theft resolution services available to you, you can visit info.krollmonitoring.com.
>
> Additional information describing your services is included with this letter.

32. Frontier did not provide additional detail about the Data Breach. Undoubtedly, Frontier was targeted due to its status as a large telecommunications company that collects, creates, and maintains PII, just as telecommunications companies such as AT&T and T-Mobile have been

targeted.

### A. Frontier is Well Aware of the Threat of Cyber Theft and Exfiltration in the Telecommunications Industry

33. As a condition of its relationships with its customers, including Plaintiff and Class Members, Defendant required that they entrust it with highly sensitive and confidential PII. Defendant, in turn, collected that information and lead consumers to be comforted that it was acting to protect that PII and to prevent its disclosure.

34. Plaintiff and Class Members were required to provide their PII with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access and disclosure.

35. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

36. Defendant could have prevented the Data Breach by assuring that the PII at issue was properly secured.

37. Defendant's overt negligence in safeguarding Plaintiff's and Class Members' PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years. Further, as a business operating in the telecommunications space, Defendant was on notice that companies in that industry are targets for data breaches, especially in light of the massive 2021 data breach at T-Mobile.

38. PII, including names and social security numbers, are uniquely valuable to hackers. With these pieces of information, criminals can open new financial accounts in Class Members' names, take loans in their names, use their names to obtain medical services, obtain government benefits and/or identification, file fraudulent tax returns in order to get refunds to which they are not even entitled, and numerous other assorted acts of thievery and fraud.

39. Social Security numbers are among the most sensitive kind of personal information and the hardest to rehabilitate if it is misused or misappropriated. An individual cannot easily obtain

a new Social Security number. Doing so, requires the provision of evidence of actual misuse. In other words, preventive action to guard against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

40. A new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

41. For this reason, hackers prey on companies that collect and maintain sensitive financial information, including telecommunications companies. Companies like Frontier need to take adequate measures to secure their systems and customer information, for a number of years.

42. In 2021, 1,862 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, an increase of 68% over 2020 and a 23% increase over the previous all-time high. These data breaches exposed the sensitive data of approximately 294 million people. Id. Hackers are increasingly targeting highly sensitive PII, including social security numbers and, in 2021, approximately 1,136 data breaches exposed social security numbers.

43. Companies, like Defendant, are well aware of the risk that data breaches pose to consumers, especially because both the size of their customer base and the fact that the PII that they collect and maintain is profoundly valuable to hackers. Indeed, Federal Reserve Chairman Jerome Powell has referred to cyber-attacks as the number one threat to the global financial system.

44. It can be inferred from the Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiff' and Class Members' PII.

45. Upon information and belief, prior to the Data Breach, Defendant was aware of its security failures but failed to correct them or to disclose them to the public, including Plaintiff and Class Members.

46. The implementation of proper data security processes requires affirmative acts. Accordingly, Defendant knew or should have known that it did not take such actions and failed to implement adequate data security practices.

47. Because Defendant has failed to comply with industry standards, while monetary relief may cure some of Plaintiff' and Class Members' injuries, injunctive relief is necessary to ensure Defendant's approach to information security is adequate and appropriate. Defendant still maintains the PII of Plaintiff and Class Members; and without the Court's intervention via injunctive relief, Representative Plaintiff' and Class Members' PII remains at risk of subsequent data breaches.

48. Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII and financial information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII financial information of Plaintiff and Class Members.

49. Defendant owed a duty to Plaintiff and Class Members to: ensure that the PII it collected and was responsible for was adequately secured and protected; create and implement reasonable data security practices and procedures to protect the PII and financial information in its possession, including not sharing information with other entities who maintained sub-standard data security systems; implement processes that would immediately detect a breach that impacted the PII it collected and was responsible for in a timely manner; act upon data security warnings and alerts in a timely fashion; disclose if its data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust this PII to Defendant; and mitigate the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

50. Defendant owed such duties to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

51. Receiving timely notice is of the essence when highly sensitive PII is subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired PII of Plaintiff and Class Members is likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their PII onto the Dark Web. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive personal information.

52. In sum, Defendant largely put the burden on Plaintiff and Class Members to take measures to protect themselves.

53. Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.5% of U.S.-based workers are compensated on an hourly basis, while the other 44.5% are salaried.[6]

54. According to the U.S. Bureau of Labor Statistics' 2018 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per week;10 leisure time is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"11 Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

55. Plaintiff and Class Members are now deprived of the choice as to how to spend their valuable free hours and seek renumeration for the loss of valuable time as another element of damages.

56. As a direct and proximate result of Defendant's reckless and negligent actions,

---

[6] Characteristics of minimum wage workers, 2020, U.S. BUREAU OF LABOR STATISTICS https://www.bls.gov/opub/reports/minimumwage/2020/home.htm#:~:text=%20In%202020%2C%2073.3%20million%20workers,wage%20of%20%247.25%20 per%20hour (last accessed March 18, 2024); Average Weekly Wage Data, U.S. BUREAU OF LABOR STATISTICS, Average Weekly Wage Data, https://www.bls.gov/news.release/pdf/wkyeng.pdf (last accessed June 27 2024) (finding that on average, private-sector workers make $1,145 per 40-hour work week.)

inaction, and omissions, the resulting Data Breach, the unauthorized release and disclosure of Plaintiff' and Class Members' PII, and Defendant's failure to properly and timely notify Plaintiff and Class Members, Plaintiff and Class Members are more susceptible to identity theft and have experienced, will continue to experience and will face an increased risk of experiencing the following injuries, *inter alia*:

a. money and time expended to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of personal information;

b. money and time lost as a result of fraudulent access to and use of their financial accounts;

c. loss of use of and access to their financial accounts and/or credit;

d. money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

e. impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

f. lowered credit scores resulting from credit inquiries following fraudulent activities;

g. money, including fees charged in some states, and time spent placing fraud alerts and security freezes on their credit records;

h. costs and lost time obtaining credit reports in order to monitor their credit records;

i. anticipated future costs from the purchase of credit monitoring and/or identity theft protection services;

j. costs and lost time from dealing with administrative consequences of the Data Breach, including by identifying, disputing, and seeking reimbursement for fraudulent activity, canceling compromised financial accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

k. money and time expended to ameliorate the consequences of the filing of fraudulent tax returns;

l. lost opportunity costs and loss of productivity from efforts to mitigate and address

the adverse effects of the Data Breach including, but not limited to, efforts to research how to prevent, detect, contest, and recover from misuse of their personal information;

m. loss of the opportunity to control how their personal information is used; and

n. continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Defendant fails to undertake appropriate, legally required steps to protect the personal information in its possession.

### B. Frontier's Inadequate Data Security Violated the Federal Trade Commission Act and FTC Guidelines

57. Pursuant to the Federal Trade Commission Act of 1915 ("FCTA"), Frontier was required to undertake reasonable and appropriate measures to protect the PII entrusted to it from unauthorized disclosure.

58. The Federal Trade Commission ("FTC") has adopted and published guidelines establishing reasonable and appropriate data security measures for businesses such as Frontier. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

59. FTC guidelines emphasize the need to address data security in business decision-making.[7] According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring

[7] "Start With Security, A Guide for Business," FED. TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited June 27, 2024)

activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.[8]

60. The FTC acknowledges that unauthorized PII disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money, and patience to resolve the fallout.[9] A failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data is an unfair act or practice prohibited by Section 5(a) of the FTC Act (the "FTCA").

61. Underscoring its importance, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. *See, In the matter of Lookout Services, Inc.*, No. C-4326, Complaint ⁋ 7 (June 15, 2011); *In the matter of DSW, Inc.*, No. C-4157, ⁋ 7 (Mar. 7, 2006); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010).

62. The FTC has also published guidance entitled, "*Protecting Personal Information: A Guide for Business*," which addresses steps that businesses should take to protect sensitive consumer data, including noting that: "[i]f you don't have a legitimate business need for sensitive personally identifying information, don't keep it."[10] Despite this guidance, Frontier appears to have kept a large amount of PII belonging to consumers who were no longer Frontier's customers. In addition, the FTC guide for business provides guidelines for maintaining network and data security, user authentication, breach detection, and other critical security best practices.[11] Defendant's failure to follow FTC guidelines, including, but not limited to, maintaining data on former customers, violated

---

8 *Id.*

9 "Taking Charge, What to Do If Your Identity is Stolen," U.S. DEPARTMENT OF JUSTICE, at 3 (January 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited on June 27, 2024).

10 https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business, last visited June 27, 2024

11 https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business, last visited June 27, 2024.

the guidelines. In addition, by its failure to adopt and maintain reasonable and adequate data security processes, Defendant engaged in unfair acts or practices within the meaning of the FTC Act.

***Personal Identifiable Information Is Valuable***

63. The PII of individuals is valuable. That is why it is on the Dark Web. Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[12] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[13] Criminals can also purchase access to entire company data breaches from $900 to $4,500.

64. Social Security numbers, are particularly valuable. They may be put to a variety of fraudulent uses and are difficult for an individual to change. According to the Social Security Administration, the loss of an individual's Social Security number, can lead to identity theft and extensive financial fraud.[14]

65. Complicating the harm caused by a stolen Social Security number, an individual cannot obtain a new Social Security number without evidence of actual misuse, thus frustrating taking preventive action to defend against the possibility of misuse of a Social Security number.

66. While victims can cancel or close stolen credit and debit card accounts, here the information compromised in this Data Breach is far more difficult to remediate, especially since it is difficult, if not impossible, to change one's Social Security number, driver's license or state identification number, and biometrics.

67. Consequently, as Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social

---

[12] Your personal data is for sale on the dark web. Here's how much it costs, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed June 27, 2024).

[13] Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, Dec. 6, 2017, available at: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-onthe-dark-web/ (last accessed June 27, 2024).

[14] Social Security Administration, Identity Theft and Your Social Security Number, available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed June 27, 2024).

Security numbers are worth more than 10x on the black market."[15]

68. Identity theft can enable cyber-thieves and fraudsters to obtain driver's licenses, government benefits, medical services, and housing: fraudulent activity resulting from the Data Breach that may not manifest for years.

69. According to the U.S. Government Accountability Office ("GAO"):

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

70. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

71. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

72. Defendant was, or should have been, fully aware of the unique type and the significant volume of data contained in Defendant's folders and files, amounting to hundreds of thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

## CLASS ACTION ALLEGATIONS

73. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23(a), (b)(1), (2), (3), and (c)(4) on behalf of the classes defined as follows:

---

15 Time Greene, Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, IT World, (Feb. 6, 2015), available at: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sellsfor-10x-price-of-stolen-credit-card-numbers.html (last accessed June 27, 2024).

16 *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at*: https://www.gao.gov/assets/gao-07- 737.pdf (last accessed June 27, 2024).

**<u>Nationwide Class</u>:** *All residents of the United States whose PII was accessed or otherwise compromised as a result of the Data Breach.*

**<u>Ohio Subclass</u>:** *All residents of the state of Ohio whose PII was accessed or otherwise compromised as a result of the Data Breach.*

Members of the Nationwide Class and the Ohio Subclass are collectively referred to as "Class Members" and, unless stated otherwise, the Nationwide Class and Ohio Subclass are referred to collectively as "the Class."

74. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

75. The proposed Nationwide Class and Ohio Subclass meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (2),(3), and (c)(4).

76. **Numerosity:** Both the Nationwide Class and the Ohio Subclass are so numerous that joinder of all members is impracticable. Based on information and belief, both the Nationwide Class and the Ohio Subclass include millions of individuals who has their PII compromised, stolen, and published during the Data Breach. The parties will be able to identify the exact size of the class through discovery and Frontier's own documents.

77. **Commonality:** There are numerous questions of law and fact common to Plaintiff and the Class including, but not limited to, the following:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant owed a duty to Plaintiff and members of the Class to adequately protect their personal information;
- whether Defendant breached their duties to protect the personal information of Plaintiff and Class members;
- whether Defendant knew or should have known that its data security systems, policies, procedures, and practices were vulnerable;
- whether Plaintiff and Class Members suffered legally cognizable damages as a result

of Defendant's conduct, including increased risk of identity theft and loss of value of PII;

- whether Defendant violated state consumer protection statutes; and
- whether Plaintiff and Class Members are entitled to equitable relief including injunctive relief.

78. **Typicality:** Plaintiff's claims are typical of the claims of the Class members. Plaintiff, like all Class members, had his personal information compromised in the Data Breach.

79. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are averse to, or in conflict with the Class Members. There are no claims or defenses that are unique to Plaintiff. Likewise, Plaintiff has retained counsel experienced in class action and complex litigation, including data breach litigation, and have sufficient resources to prosecute this action vigorously.

80. **Predominance:** The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions which may affect only individual Class Members.

81. **Superiority:** The proposed action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

82. Absent a class action, the majority of Class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

83. **Risks of Prosecuting Separate Actions:** Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendant. Defendant continues to maintain the PII of Class Members and other individuals, and varying adjudications could establish incompatible standards

with respect to its duty to protect individuals' PII; and whether the injuries suffered by Class Members are legally cognizable, among others. Prosecution of separate actions by individual Class Members would also create a risk of individual adjudications that would be dispositive of the interests of other class members not parties to the individual adjudications, or substantially impair or impede the ability of Class Members to protect their interests.

84. **Injunctive Relief:** In addition, Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the class under Federal Rule of Civil Procedure 23(b)(2). Defendant continues to (1) maintain the PII of Class members, (2) fail to adequately protect said PII, and (3) violate Class Members' rights under state consumer protection laws and other claims alleged herein.

## FIRST CAUSE OF ACTION
### Negligence
(On Behalf of the Nationwide Class against Defendant or, Alternatively, the Ohio Subclass)

85. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

86. Plaintiff brings this claim on behalf of themselves and the Class.

87. Plaintiff and Class Members were required to provide Defendant with their PII. Defendant collected and stored this information including their names, Social Security numbers, email address, mailing address, birth date, and other PII.

88. Defendant had a duty to Plaintiff and Class Members to safeguard and protect their PII.

89. Defendant assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

90. Defendant has full knowledge about the sensitivity of Plaintiff's and Class Members' PII, as well as the type of harm that would occur if such PII was wrongfully disclosed.

91. Defendant has a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with user PII data.

92. Defendant breached their duty of care by failing to secure and safeguard the PII of Plaintiff and Class members. Defendant negligently stored and/or maintained its data security systems and published that information on the Internet.

93. Further, Defendant by and through their above negligent actions and/or inactions, breached their duties to Plaintiff and Class Members by failing to design, adopt, implement, control, manage, monitor, and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and Class Members' PII within their possession, custody and control.

94. Plaintiff and the other Class Members have suffered harm as a result of Defendant's negligence. These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from either use of the compromised information, or access to their user accounts.

95. It was reasonably foreseeable – in that Defendant knew or should have known – that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII would result in its release and disclosure to unauthorized third parties who, in turn wrongfully used such PII, or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

96. But for Defendants' negligent and wrongful breach of their responsibilities and duties owed to Plaintiff and Class Members, their PII would not have been compromised.

97. As a direct and proximate result of Defendant's above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, they have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm for which they are entitled to compensation. Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence/negligent misrepresentation.

98. Plaintiff and Class Members are entitled to injunctive relief as well as actual and punitive damages.

## SECOND CAUSE OF ACTION

**Breach of Contract**
(On Behalf of the Nationwide Class against Defendant or, Alternatively, the Ohio Subclass)

99. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

100. Plaintiff and Class Members entered into a contract with Defendant for the provision of title insurance or other closing services.

80. The terms of Defendant's privacy policy are part of the contract it enters with each Class Member to provide wireless services.

81. Plaintiff and Class Members performed substantially all that was required of them under their contract with Defendant, or they were excused from doing so.

82. Defendant failed to perform its obligations under the contract, including by failing to provide adequate privacy, security, and confidentiality safeguards for Plaintiff and Class Member's information.

83. As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received title insurance or other closing services that were less valuable than described in their contracts. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in value between that which was promised and Defendant's deficient performance.

84. Also, as a result of Defendant's breach of contract, Plaintiff and Class Members have suffered actual damages resulting from the exposure of their personal information, and they remain at imminent risk of suffering additional damages in the future.

85. Accordingly, Plaintiff and Class Members have been injured by Defendant's breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
(On Behalf of the Nationwide Class against Defendant or, Alternatively, the Ohio Subclass)

86. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

87. Defendant received a benefit from Plaintiff and the Class in the form of payments for its services.

88. The benefits received by Defendant were at the expense of Plaintiff and Class Members.

89. The circumstances here are such that it would be unjust for Defendant to retain the portion of Plaintiff's and Class Members' payments that should have been earmarked to provide adequate privacy, security, and confidentiality safeguards for Plaintiff's and Class Members' personal information.

90. Plaintiff and the Class seek disgorgement of Defendant's ill-gotten gains.

## FOURTH CAUSE OF ACTION
**Breach of Implied Contract**
(On Behalf of the Nationwide Class against Defendant or, Alternatively, the Ohio Subclass)

80. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

81. Plaintiff and Class Members were required to provide their PII to Defendant as a condition of their use of Defendant's services. By providing their PII, and upon Defendant's acceptance of such information, Plaintiff and Class Members, on one hand, and Defendant, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contracts.

82. These implied-in-fact contracts obligated Defendant to take reasonable steps to secure and safeguard Plaintiff's and Class Members' PII. The terms of these implied contracts are further described in the federal laws, state laws, and industry standards alleged above, and Defendant expressly assented to these terms in their Privacy Policy and other public statement described above.

83. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services, along with Defendant's promise to protect their PII from unauthorized disclosure.

84. *****In its Privacy Policy, Defendant expressly promised Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach. **[CHECK]**

85. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide PII was Defendant 's obligation to (a) use such PII for business purposes only; (b) take

reasonable steps to safeguard that PII; (c) prevent unauthorized disclosures of the PII; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII; (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses; and (f) retain the PII only under conditions that kept such information secure and confidential.

86. Without such implied contracts, Plaintiff and Class Members would not have provided their PII to Defendant.

87. Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant; however, Defendant did not.

88. Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff's and Class Members' PII, which was compromised as a result of the Data Breach.

89. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; they did not get the benefit of their bargain with Defendant; they lost the difference in the value of the secure telecommunication services Defendant promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, including, *inter alia*, that required to place "freezes" and "alerts" with credit reporting agencies, to contact financial institutions, to close or modify financial accounts, to closely review and monitor credit reports and various accounts for unauthorized activity, and to file police reports; and Plaintiff and other Class Members have been put at an increased risk of identity theft, fraud, and/or misuse of their PII, which may take months if not years to manifest, discover, and detect.

## FIFTH CAUSE OF ACTION [DISCUSS]
**Breach of Fiduciary Duty**
(On Behalf of the Nationwide Class against Defendant or, Alternatively, the Ohio Subclass)

80. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

81. In light of their special relationship, Defendant has become the guardian of Plaintiff's and Class Members' PII. Defendant has become a fiduciary, created by its undertaking and guardianship of its customers' PII, to act primarily for the benefit of its customers, including Plaintiff and Class Members. This duty included the obligation to safeguard Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

82. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its relationship. Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to properly encrypt and otherwise protect the integrity of the system containing Plaintiff's and Class Members' PII.

83. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to (a) actual identity theft; (b) an increased risk of identity theft, fraud, and/or misuse of their PII; (c) the loss of the opportunity of how their PII is used; (d) the compromise, publication, and/or theft of their PII; (e) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (f) lost opportunity costs associated with the effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (g) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect customers' PII in their continued possession; and (h) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

84. As a direct and proximate result of Defendant's breach of their fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## <u>SIXTH CAUSE OF ACTION</u>
**Breach of Implied Covenant**

**of Good Faith and Fair Dealing**
(On Behalf of the Nationwide Class or Alternatively, the Ohio Subclass)

85. Plaintiff, individually and on behalf of the Nationwide Class or alternatively the Ohio Subclass, re-alleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

86. Plaintiff and Class Members entered into valid, binding, and enforceable express or implied contracts with Defendant, as alleged above.

87. These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and not to impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly and in good faith in carrying out its contractual obligations to take reasonable measures to protect Plaintiff's and Class Members' PII and to comply with industry standards and federal and state laws and regulations.

88. A "special relationship" exists between Defendant and the Plaintiff and Class Members. Defendant entered into a "special relationship" with Plaintiff and Class Members who entrusted Defendant, pursuant to Defendant's requirements, with their PII.

89. Despite this special relationship with Plaintiff and Class Members, Defendant did not act in good faith and with fair dealing to protect Plaintiff's and Class Members' PII.

90. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant.

91. Defendant's failure to act in good faith in implementing the security measures required by the contracts denied Plaintiff and Class Members the full benefit of their bargain, and instead they received wireless and related services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiff and Class Members were damaged in an amount at least equal to this overpayment.

92. Defendant's failure to act in good faith in implementing the security measures required by the contracts also caused Plaintiff and Class Members to suffer actual damages resulting

from the theft of their PII, and Plaintiff and Class Members remain at imminent risk of suffering additional damages in the future.

93. Accordingly, Plaintiff and Class Members have been injured as a result of Defendant's breach of the covenant of good faith and fair dealing and are entitled to damages and/or restitution in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
**Injunctive/Declaratory Relief**
(On Behalf of the Nationwide Class against Defendant or, Alternatively, the Ohio Subclass)

94. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

95. This Count is brought under the federal Declaratory Judgment Act, 28 U.S.C. §2201.

96. As previously alleged, Plaintiff and Class Members entered into an implied contract that required Defendant to provide adequate security for the PII they collected from Plaintiff and Class Members.

97. Defendant owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PII.

98. Defendant still possesses PII regarding Plaintiff and Class Members.

99. Since the Data Breach, Defendant has announced few if any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent further attacks.

100. Defendant has not satisfied their contractual obligations and legal duties to Plaintiff and Class Members. In fact, now that Defendant's insufficient data security is known to hackers, the PII in Defendant's possession is even more vulnerable to cyberattack.

101. Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the

exposure of their PII and Defendant's failure to address the security failings that lead to such exposure.

102. There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

103. Plaintiff therefore seeks a declaration (1) that Defendant's existing security measures do not comply with their contractual obligations and duties of care to provide adequate security, and (2) that to comply with their contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

a. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

d. Ordering that Defendant segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e. Ordering that Defendant not transmit PII via unencrypted email;

f. Ordering that Defendant not store PII in email accounts;

g. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

h. Ordering that Defendant conduct regular computer system scanning and security checks;

i. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j. Ordering Defendant to meaningfully educate their current, former, and prospective customers about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a. An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Nationwide Class and Ohio Subclass requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representatives of the Nationwide Class and Ohio Subclass requested herein;

b. Declaratory relief requiring Defendant to (1) strengthen their data security systems that maintain personally identifying information to comply with the applicable state laws alleged herein and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendant's systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

c. An order requiring Defendant to pay all costs associated with class notice and administration of class-wide relief;

d. An award to Plaintiff and all Class Members of compensatory, consequential, incidental, and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

e. An award to Plaintiff and all Class Members credit monitoring and identity theft protection services;

f. An award of attorneys' fees, costs, and expenses, as provided by law or

equity;

g. An order requiring Defendant to pay pre-judgment and post-judgment interest, as provided by law or equity; and

h. Such other or further relief as the Court may allow.

Dated: July 12, 2024

Respectfully submitted,

**STECKLER WAYNE & LOVE PLLC**

By: */s/ Bruce W. Steckler*

BRUCE W. STECKLER
Texas Bar I.D. 00785039
Paul D. Stickney, of Counsel
Texas Bar I.D. 00789924
12720 Hillcrest Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com
judgestick@gmail.com

**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER
SAMUEL M. WARD*
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

*Counsel for Plaintiff Nicholas McHenry*

*Application for admission *Pro Hac Vice* forthcoming